# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

**PAMELA RAMSEY,**

      **Plaintiff,**

**vs.**                        **Case No.  5:17cv191-CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of the Social
Security Administration,**

      **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This case is before the court pursuant to 42 U.S.C. § 405(g) for

review of a final determination of the Commissioner of Social Security

("Commissioner") denying Pamela Ramsey's Title II application for disabled

widow's benefits under 42 U.S.C. § 402(e).  The parties have consented to

Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal

Rule of Civil Procedure 73 for all proceedings in this case, including entry

of final judgment.  ECF No. 10.  After careful consideration of the entire

record, the decision of the Commissioner is reversed and remanded for

further proceedings.

**I. Procedural History and Facts**

On November 21, 2013, Plaintiff filed an application with the Social Security Administration for disabled widow's benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act.  Tr. 102, 215-21.[1]  She later withdrew the application for SSI because the date last insured was 2007. Tr. 63-64.

In her application for disabled widow's benefits, Plaintiff alleged that she and Paige Jackson Ramsey were married on October 30, 1993. Tr. 209.  Plaintiff further alleged that her marriage ended by his death on November 15, 2013.  Tr. 209, 94.  She alleged a disability onset date of November 15, 2013, citing back problems, Lupus, anxiety, seizures, depression, kidney problems, leg problems, and headaches.  Tr. 209, 91. Plaintiff was 54 years and six months of age when she filed the application and turned age 55 on April 25, 2014, approximately two years before issuance of the decision in this case.  Plaintiff's claim for disabled widow's benefits was denied initially on March 11, 2014, and upon reconsideration

---

[1] Citations to the transcript/administrative record (ECF No. 12) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

on July 24, 2014.  Tr. 132-39, 146-57.  A hearing was held on April 18, 2016, before Administrative Law Judge (ALJ) Jim Beeby, at which Plaintiff appeared with counsel.  Vocational expert Jane Colvin-Roberson also appeared and testified.  Tr. 37-78.

On June 22, 2016, The ALJ issued a decision denying Plaintiff's application.  Tr. 20-36.  Plaintiff sought review in the Appeals Council, which denied review on May 18, 2017.  Tr. 1-5.  Thus, the decision of the ALJ became the final decision of the Acting Commissioner and is ripe for review.  Accordingly, Plaintiff, appearing through counsel, filed a complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).  *See* ECF No. 1.  Respondent filed an answer on October 17, 2017, ECF No. 11, and both parties filed memoranda in support of their positions.  ECF Nos 18, 19.  On Plaintiff's motion, she was given leave to reply to the Commissioner's memorandum and the reply was filed on March 15, 2018.  ECF No. 22.

### A. The Hearing

At the hearing held April 18, 2016, Plaintiff testified that she lives in subsidized housing with a caregiver due to Plaintiff's seizures.  Tr. 43-44. She said she has not had a driver's license since 2000, although that date is approximate.  Tr. 44.  Plaintiff received a GED in 1979 and currently

receives food stamps. She last worked for a doctor in 2003 as a patient receptionist checking in patients, pulling their charts, checking their insurance, taking them to treatment rooms, and doing general office work. Tr. 72. She resigned from her job in 2003 to take care of her husband who had two open heart surgeries. Tr. 46. Her back surgery also made it hard for her to work at that time. Tr. 47. In the past, she also performed the job of cashier. She has no current income. Tr. 45-46, 70-71.

Plaintiff testified that her daily activities include drinking her coffee in the morning and straightening up the house. She eats microwave food unless her caregiver cooks. Tr. 48. Plaintiff watches television during the day. She is able to bathe and dress. Tr. 49. She testified that she can walk for about ten minutes at a time and can sit for about 30 minutes. *Id.* She can lift and carry about five to seven pounds without pain. Tr. 49, 62. She takes Fioricet for headaches and Phenergan for nausea, both of which are prescribed by nurse practitioner Kristine Serian. Tr. 50.

When asked what bothers her most and keeps her from working, Plaintiff identified her seizures, which she said has been a problem for about seven years. *Id.* She said her seizures are unpredictable and happen about three or four times a month. Tr. 51. Sometimes the seizures are grand mal, which she said occur about twice a month. She takes

Keppra for her seizures, but still has them.  Tr. 50-51, 66.  Plaintiff testified

that after a seizure, she is confused and it takes 30 minutes to several

hours to recover.  Tr. 65-66, 67.  Her seizures are very scary especially

when she falls, so she mostly stays home.  Tr. 66.  She once fell through a

glass coffee table during a seizure.  Tr. 67.  She said she does not go to

the emergency room because she has no insurance.  *Id.*

Her next most bothersome problem that affects her ability to work is

anxiety disorder, for which she said she is not treated but should be.

Tr. 52.  Plaintiff testified that she saw a Social Security psychologist several

years ago after her husband died.  Tr. 63.  Plaintiff testified she learned in

August of 2015 that she is at high risk for stroke due to partially occluded

carotid arteries.  Tr. 53.

Plaintiff began seeing Kamel Elzawahry, M.D., in 2002 for back

surgeries, neck problems, anxiety, and neuropathy in her left leg.  Tr. 54.

Plaintiff said she forgot to list back problems as one of her impairments

when she made her application.  Tr. 55.  She testified that her two back

surgeries were not totally successful and she still has back pain that

radiates down to her legs.  *Id.*  Plaintiff said her back pain affects her when

she sits, walks, and bends.  Tr. 56.  She testified she must lie down

sometimes during the day due to pain. Tr. 57.  She said her knees hurt due

to severe osteoarthritis, which affects her ability to walk for any distance. Tr. 58-59. She can only manage about 10 to 20 minutes when shopping. Tr. 60. Plaintiff said she thinks she has fibromyalgia because her whole body hurts. Tr. 60-61. She testified she could not be on her feet for six hours total in a workday, and maybe not even three. Tr. 62.

Independent vocational expert Jane Colvin-Roberson testified that Plaintiff's past work falls in the category of general office clerk, DOT #219.362-010, light, semi-skilled, SVP of 4.[2] Tr. 74. The ALJ posed a hypothetical scenario describing a person with Plaintiff's same age, education, and prior work experience, who can lift and carry, push, and pull 20 pounds occasionally and 10 pounds frequently, can sit for six hours and stand and/or walk for six hours, can never climb ladders, ropes, or

---

[2] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), which is one of the examples of sources that the ALJ may rely on for job information. *See* SSR 00-4p; 20 C.F.R. § 404.966(d) and 416.966(d). The ALJ may also rely on a vocational expert or other specialist. *See* § 404.966(e). "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* An SVP of 4 allows for preparation time of over three months up to and including six months. 20 C.F.R. § 404.1567(a). "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. § 404.1568(b).

scaffolds, can frequently climb ramps and stairs, and can tolerate occasional exposure to humidity, noise, vibration, hazards, fumes, odors, dusts, gases, poor ventilation, and extreme cold. This person would miss one day of work per month due to seizures. Tr. 75. The vocational expert opined that such a person could perform Plaintiff's past work, as well as that of cashier in a cafeteria or dining room, DOT #211.462-010, for which there are approximately 645,000 jobs in the national economy; counter clerk, DOT #249.366-101, for which there are just over 72,000 jobs in the national economy; and sales attendant, DOT #299.677-010, light exertional, SVP of 2, for which there are approximately 65,000 jobs in the national economy, but significantly fewer for part time. Tr. 75-76.

In a second hypothetical, the ALJ posed the additional limitation that the person would miss at least two days of work per month due to seizures. Tr. 76. The vocational expert opined that there was no work that this person could perform on a sustained basis. *Id.* The vocational expert testified that her testimony was not inconsistent with the DOT, but noted that the DOT does not address absenteeism issues. Her testimony on that issue was based on her experience. Tr. 76-77.

**B. The Decision of the Administrative Law Judge**

In the decision issued on June 22, 2016, the ALJ made several findings pertinent to this review. Tr. 23-31. The ALJ found that Plaintiff is the widow of a deceased insured worker and has attained the age of 50, and that the prescribed period ends on March 31, 2019. Tr. 23. The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 15, 2013. *Id.* The ALJ found that Plaintiff has the following severe impairments: spine disorder, seizure disorder, and peripheral neuropathy. *Id.* The ALJ found that Plaintiff's headaches, fibromyalgia, lupus erythematosus, anxiety and depressive disorder are non-severe impairments, Tr. 23-24, and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24-25.

The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1576(b) and 416.967(b).[3] Tr. 25. The RFC limitations found by the ALJ are that Plaintiff

---

[3] Residual functional capacity is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at

can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently; can sit for six hours, and stand and/or walk for six hours with normal breaks in an eight-hour day; can never climb ladders, ropes or scaffolds; can frequently climb ramps and stairs; and can tolerate occasional exposure to humidity, noise, vibration, hazards, fumes, odors, dusts, gases, poor ventilation, and extreme cold.  The ALJ determined that Plaintiff would miss one day of work per month due to her seizures.  Tr. 25.

Based on this RFC determination with stated limitations, the ALJ found that Plaintiff is capable of performing past relevant work as a general office clerk, DOT #219.362-010, light exertion, semi-skilled, SVP of 4, which does not require the performance of work-related activities precluded by the RFC.  Tr. 30.  The ALJ found that Plaintiff could perform this past work as it is generally performed in the national economy.  Tr. 31.  To the extent that the DOT lists the maximum requirements of occupations as generally performed, and does not take into account the limiting effect of non-exertional limitations such as postural or mental limitations or sit/stand

---

*12 (July 2, 1996) (rescinded eff. Mar. 27, 2017, 2017 WL 3929298) ("The term '*residual functional capacity assessment'* describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

options, the ALJ relied on the testimony of the vocational expert based on her experience and specific knowledge. *Id.*

Finally, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 15, 2013, through the date of the decision, June 22, 2016. *Id.* Based on these findings, and the reasons set forth in the decision, the ALJ found Plaintiff is not disabled under section 1614(a)(3)(A)[4] of the Social Security Act. Tr. 48.

## II. Legal Standards Guiding Judicial Review

In this review proceeding, the Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219,

---

[4] Section 1614(a)(3)(A) of the Social Security Act is codified at 42 U.S.C. § 1382. *See* Higginbotham v. Barnhart, 163 F. App'x 279, 280 n.1 (5th Cir. 2006).

1221 (11th Cir. 2002) (citations omitted).[5]  The Court may not decide the

facts anew, reweigh the evidence, or substitute its judgment for that of the

Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must

scrutinize the entire record, consider evidence detracting from the evidence

on which the Commissioner relied, and determine the reasonableness of

the factual findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992);

Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is

deferential, but the reviewing court conducts what has been referred to as

"an independent review of the record."  Flynn v. Heckler, 768 F.2d 1273,

1273 (11th Cir. 1985).

A "physical or mental impairment," under the terms of the Social

Security Act, is one "that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.

---

[5] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

§ 423(d)(3).  With respect to her claim for disabled widow's benefits, the plaintiff must establish that she became disabled on or before March 31, 2019.  *See* 20 C.F.R. § 404.335(c)(1).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

In order to be entitled to disabled widow's benefits, a claimant must establish, among other things, that she is at least 50 years of age, unmarried unless an exception set forth in 20 C.F.R. § 404.335(e) applies, and a widow of a wage earner who died fully insured.  She must be found disabled no later than seven years after the spouse's death or seven years

after she was last entitled to mother's benefits.  *See* § 404.335(c).  She must establish that she has physical or mental impairments that result in disability as defined in 42 C.F.R. § 404.1505.  *Id.*  The definition of disability for disabled widow's benefits is the same as for the standard disability case and the five-step sequential evaluation process is applicable to disabled widow's benefits cases.  *See* 20 C.F.R. § 404.1505(a) and § 404.1520(a)(4)(i)-(v).

Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At the second step, the claimant must show she has a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  Step two is a threshold inquiry, and the ALJ does not go on to step three if the claimant fails to meet step two, but will find claimant is "not disabled."  McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the claimant must show that her severe impairment or combination of impairments meets or equals the criteria in the Listings of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant cannot meet or equal one of the listings, the ALJ considers at step four whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work.  § 404.1520(a)(4)(iv).  If the claimant establishes she cannot

perform her past relevant work, the burden shifts to the Commissioner at step five to show that significant numbers of jobs exist in the national economy that the claimant can perform in light of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(d), (g); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); McMahon v. Comm'r, Soc. Admin., 583 F. App'x 886, 887 (11th Cir. 2014) (unpublished). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled and, consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished). The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the

claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).[6] "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053. (11th Cir. 1986).

The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory

---

[6] This provision applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017." For claims filed after that date, the applicable provision is 20 C.F.R. § 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."

findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.  Phillips, 357 F.3d at 1241.

Opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  Although a claimant may provide a statement containing a treating physician's opinion of her remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence

presented and the ALJ must make the ultimate determination of disability.
*See* 20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

## III. Analysis

Plaintiff contends that the ALJ reversibly erred (1) by failing to
address Plaintiff's bilateral knee impairments (ECF No. 18 at 17); (2) by
giving limited weight to the opinion of treating physician Kamel Elzawahry,
M.D. (ECF No. 18 at 20); and (3) by finding that Plaintiff's alleged
symptoms and limitations are not entirely credible in violation of SSR 16-3p
(ECF No. 20 at 28).  Because this case is resolved on the basis of
Plaintiff's second contention, that is the sole issue for discussion.

### Opinions of Neurologist Kamel Elzawahry, M.D.

Plaintiff contends that the ALJ reversibly erred in according
Dr. Elzawahry's opinions limited weight as "not fully supportable," and
instead according great weight to the opinion of Debra Troiano, M.D., a
non-examining agency medical consultant, who opined in 2014 that Plaintiff
could do a light range of work.  ECF No. 20 at 20.

In considering Dr. Elzawahry's opinions, the ALJ noted that Dr.
Elzawahry treated Plaintiff remotely from 2002-2005, remotely in 2009, and
once in 2010.  Tr. 29 (citing records at Tr. 291-331; 369-96).  The ALJ
noted that Plaintiff then saw Dr. Elzawahry on April 13, 2016, when the

doctor examined Plaintiff and executed a Medical Source Statement.
Tr. 29 (citing record at Tr. 416-25).  In brief, in the Medical Source
Statement, Dr. Elzawahry opined that Plaintiff had neck, back, and leg pain
and could not sit or stand/walk for more than two hours in each eight-hour
workday, could not lift more than ten pounds, would be off task 25% or
more of the workday, and would miss more than four days of work per
month.  Tr. 404-08.

The ALJ explained the reasons for according Dr. Elzawahry's
opinions limited weight, first, by noting that he used a check box, short
answer format, with no narrative discussing treatment visit complaints,
examination results, or radiological testing.  Tr. 29.  Second, the ALJ found
that Dr. Elzawahry's April 14, 2016, letter to Plaintiff's counsel, Tr. 416, was
not a medical opinion but was an administrative finding dispositive of the
case.  That letter stated that Plaintiff has failed laminectomy syndrome with
severe radiculopathy and lumbar facet syndrome.  *Id.*  The letter also
stated that Plaintiff suffers from seizures that cause a "great deal of
limitation to her" and that she is not able to sit, stand, walk, or carry heavy
objects for any extended period of time; and the medication for her seizures
affects her attention span and driving.  *Id.*  In the last paragraph of the

letter, Dr. Elzawahry opined that Plaintiff is totally and permanently disabled. *Id.*

The third reason given by the ALJ for according limited weight to the opinion of Dr. Elzawahry was that, except for the examination on April 13, 2016, when the Medical Source Statement was completed, Plaintiff had not seen Dr. Elzawahry since June 17, 2010, rendering his relationship to Plaintiff as one of a consultative examiner. Tr. 29. Fourth, the ALJ noted that Plaintiff's first back surgery was in 2003 and her last surgery was in 2006, and that the February 19, 2014, consultative examination by Dr. Lewandowski found the back pain was non-radiating and Plaintiff was taking no medications for it. Tr. 30 (citing record at Tr. 351-55). The ALJ noted that the examination revealed normal range of motion throughout Plaintiff's back, neck, extremities, and joints, with normal grip strength and negative straight leg raise. *Id.*

The fifth reason cited by the ALJ for giving limited weight to the opinions of Dr. Elzawahry concerned Plaintiff's seizures, and noted that he stated in his notes that her seizures were controlled with medication, although causing drowsiness and poor attention. Tr. 30 (citing record at 417). In addition, the ALJ cited the office notes of consultative examiner Dr. Lewandowski on February 19, 2014, indicating that Plaintiff reported

only having eight seizures in seven years. Tr. 30 (citing records at 351-55). The ALJ also cited office notes of ARNP Serian for January 21, 2013, through December 17, 2013, that showed no seizures or medication for seizures. Tr. 30 (citing records at 334-38). However, the ALJ also noted that ARNP Serian's later treatment records (for December 13, 2013, through February 5, 2016) showed two seizures in close proximity—one on July 6, 2015, and one on August 24, 2015. Tr. 30 (citing records at 408-14). The ALJ found that there was "no current medical evidence of record regarding Plaintiff's seizures." Tr. 30.

A review of Plaintiff's medical history shows that on August 9, 2002, MRI's of Plaintiff's cervical and lumbar spine showed a minimal disc bulge at C5-6 and a shallow broad-based right posterolateral disc protrusion at C6-7 that may irritate the exiting nerve root on the right. Tr. 396. Moderate disc degeneration was seen at L5-S1 and mild disc degeneration at T10-11 and T11-12. Tr. 395. An August 10, 2002, NCV/EMG[7] report indicated posterior primary rami spinal root irritation in the lower cervical and lumbar paraspinous region. Tr. 298. Plaintiff had spinal laminectomy surgery in 2002, but Dr. Elzawahry's office notes of December 10, 2002, indicate she continued to have back and neck symptoms in spite of physical therapy

---

[7] Nerve Conduction Velocity/Electromyography

and had recently had a fall which further aggravated her symptoms.
Tr. 326.  Plaintiff saw Dr. Elzawahry on December 16, 2002, for complaints
of severe left foot pain and received trigger point injections.  Tr. 325.

In March of 2003, Dr. Elzawahry's office notes indicate Plaintiff could
walk better but still had back pain and continued to take Vicodin, Soma,
and Xanax, and that she had left her employment due to her medical
problems.  Tr. 324.  September 2003 notes show Plaintiff continued to have
waxing and waning symptoms but tandem walking, gait, station, and base
were normal.  Tr. 323.

Dr. Elzawahry's notes in March 2004 indicate Plaintiff was having
increased back pain.  Tr. 322.  A second back surgery was done in summer
of 2004 and in August, Plaintiff reported residual discomfort.  Tr. 321-22.  In
March of 2005, Dr. Elzawahry noted that Plaintiff remained symptomatic
and recommended an MRI of the lumbar spine and NCV/EMG testing of
lower extremities.  Tr. 319-20.  In October 2005, Dr. Elzawahry reported
that the MRI showed postoperative changes and evidence of scarring.
Tr. 318, 392.  The MRI of the lumbar spine showed a residual small disc
bulge contacting the S1 nerve root sleeve with enhancing scar tissue at L5-
S1.  Tr. 390-92.  Plaintiff was diagnosed with failed laminectomy syndrome.
*Id.*  Dr. Elzawahry's December 2005 notes indicate electrophysiologic

findings of predominately L5 radiculopathy with a superimposed left deep peroneal motor mononeuropathy.  Tr. 294, 317.

In February 2006, Dr. Elzawahry noted that Plaintiff reported an acute exacerbation of symptoms aggravated by activity.  Tr. 315.  Her complex medical and neurological examination was essentially unchanged.  *Id.*  She was diagnosed with failed laminectomy syndrome with persistent symptomology.  *Id.*  The notes also indicate Plaintiff inquired about disability and he concurred that she qualified.  *Id.*  A June 22, 2006, MRI of the lumbar spine noted post-surgical changes at L5-S1 with scar tissue effacing the left lateral recess, with left foraminal stenosis likely related to disc height loss and marginal osteophyte formation, and a lesser degree of encroachment on the right.  Tr. 388.  On June 30, 2016, Plaintiff continued to complain of back pain and Dr. Elzawahry gave her refills of her medication and cautioned against driving while taking the medication. Tr. 313.  His notes indicate normal gait and strength at 5/5 in all extremities.  Tr. 314.

In December 2006, office notes indicate Plaintiff continued to complain of low back pain radiating down the left buttock and leg.  Tr. 312. Dr. Elzawahry recommended "conservative treatment measures" and activities as tolerated.  She was given refills of her mediations.  Tr. 311.

July 2007 office notes indicate that Plaintiff's "disability did not come through." Tr. 310. Plaintiff continued to report low back pain radiating into both legs. Notes concluded that "[t]here is no need for diagnostics at this point." Tr. 309. In early 2008, Plaintiff continued to report low back pain and radiation into both extremities despite continued Lortab, Soma, and Xanax medications. Tr. 307-08. In July 2008, Plaintiff reported her pain as 10/10, and that pain is increased on activity and bending. Tr. 306. Weakness of the lower left extremity with foot drop and decreased reflexes were noted. Tr. 305. It was reported that the Neurontin helps but that she cannot afford it all the time. Tr. 306. The notes state, "She did not do the patient assistance program for Neurontin. We filled it out at today's visit so it could be mailed in." Tr. 305. Office notes indicate +1 pedal edema, tenderness to palpation of the lumbar spine, pain with extension, negative straight leg raising, and positive forward bending. Tr. 306. Conservative treatment measures were again recommended.

In 2009, Dr. Elzawahry's notes that Plaintiff still appears to be in a great deal of pain. Tr. 303. In 2010, Plaintiff continued to report pain at a level of 7/10, and she had decreased strength of 4/5 of the left upper and lower extremities, and decreased reflexes in the left lower and right lower extremities. Tr. 382-83. Plaintiff also reported some knee pain in June

2010; and she reported severe bilateral knee pain to Dr. Elzawahry in December 2010.  Tr. 382, 378.  At that time, her gait was reported as antalgic, slow and limited by low back pain.  Tr. 383, 380-81.  Lortab, Soma, and Xanax were continued.  *Id.*  Examination notes from the Brain & Spine Center for January 31, 2011, referred to Plaintiff's examination by Dr. Elzawahry on December 21, 2010, for bilateral severe knee pain. Tr. 373.  The notes also discuss the January 11, 2011, MRI of Plaintiff's knees.  *Id.*  Plaintiff's MRI of both knees showed severe osteoarthritis of the bilateral knees for which injections were recommended.  Tr. 371, 374-75. The January 31, 2011, office notes indicate that Plaintiff's gait was antalgic, slow, and limited by chronic low back pain and chronic knee pain.  Her tandem gait was unsteady.  Tr. 374.

   In 2014, Plaintiff was seen by Pan Care of Florida, Kongsak Chantornsaeng, M.D., who saw her for neck pain, low back pain, anxiety, left arm pain for which an X-ray had been performed,[8] and headache. Tr. 361-68.  Muscle weakness was not indicated.  Tr. 362-67.  When Plaintiff was given a consultative examination by Dr. Lewandowski on February 19, 2014, her pain was reported to be 5/10 with reduced strength on the left side.  Her back pain was reported to be "non-radiating" and she

---

[8] It was reported that Plaintiff fractured her left forearm in 2013.

was not taking any medication for it.  Tr. 351, 353.  Clinical examination was normal with the exception of reduced strength in her left calf muscle and extensor digitorum longus.  Tr. 351, 354-56.  She reported nine seizures in seven years, included one that occurred toward the end of 2013.  Tr. 353.  Dr. Lewandowski did not find her functional ability to be impaired.  Tr. 351.

In July and August 2015, Plaintiff reported seizures to ARNP Christine Serian.  Tr. 411.  Serian saw Plaintiff through February 2016 and prescribed medications for her including Vistaril, Phenergan, and Fioricet.  Tr. 411-14.  Plaintiff reported cutting down on her dosage of the seizure drug Keppra due to cost.  Tr. 410.  After a fall during her August 2015 seizure, Plaintiff was hospitalized at Gulf Coast Medical Center and diagnosed with subarachnoid hemorrhage due to trauma.  Tr. 427-33.  In the hospital notes, Victor Ortega, M.D., indicated in the diagnostic impression section that Plaintiff had traumatic subarachnoid hemorrhages bilaterally, seizure disorder, chronic low back pain, anxiety, and depression.  Tr. 432.  Her musculoskeletal range of motion was reported to be full and her gait normal.  Tr. 428.  Plaintiff's noncompliance with anticonvulsant therapy was noted.  *Id.*  She was discharged with prescriptions for Fioricet for headaches, Norco for pain, Xanax, and Keppra.  Tr. 429.

In April 2016, Plaintiff returned to Dr. Elzawahry for examination and completion of a Medical Source Statement.  Tr. 397-407.  Dr. Elzawahry's examination notes indicated a normal gait, but decreased reflexes at the bilateral Achilles, and pain with lumbar spine range of motion and a positive straight leg raise.  Tr. 419.  He noted Plaintiff's reports of neck, back and leg pain with numbness and weakness of the lower extremities, worse with movement and activity.  Tr. 398.  His Medical Source Statement executed that same date checked a box indicating abnormal gait.  Tr. 421.

Dr. Elzawahry opined in the Medical Source Statement that Plaintiff could walk up to three blocks, sit for thirty minutes and stand for fifteen minutes at a time, but sit/stand/walk for a total of less than two hours each, and would need to shift positions at will.  Tr. 400.  She could lift less than ten pounds occasionally and ten pounds rarely.  Tr. 401.  She would require unscheduled breaks on average for thirty minutes at a time, and would need to elevate her legs for up to 75% of the day.  Tr. 401.  Dr. Elzawahry opined that Plaintiff would be off task more than 25% of the day and would miss more than four days of work each month.  Tr. 402.  In contrast to Dr. Elzawahry's opinions, non-examining consultant Debra Troiano, M.D., opined in 2014 that Plaintiff could perform a significant range of light exertional activity.  Tr. 112-14.

Respondent contends that because Dr. Elzawahry last treated Plaintiff in 2010, and only saw him in 2016 in order to obtain the Medical Source Statement, he is not a treating physician who could provide a longitudinal picture of Plaintiff's condition, but is more in the nature of a one-time examiner not characterized as a treating physician. Respondent argues that even if Dr. Elzawahry qualifies as a treating physician, the ALJ had good cause to give his opinion limited weight. ECF No. 19 at 10-11.

Based on Plaintiff's medical record, and Plaintiff's testimony concerning her condition and her limitations, Plaintiff argues that even if the Dr. Elzawahry's opinions are not accorded controlling weight as opinions of a treating physician, the ALJ must properly consider his opinions according to the factors found in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to give the opinions. Plaintiff argues that when Dr. Elzawahry's opinions are properly considered in light of these factors, the reasons given by the ALJ for according only limited weight to his opinions are shown to be erroneous. ECF No. 21. The factors include (1) length of treatment; (2) frequency of examination by the medical source; (3) nature and extent of the treatment relationship; (4) supportability of the opinion with regard to medical evidence; (5) consistency of the opinion with regard to medical evidence; and (6) specialization of the medical source.

*See* 20 C.F.R. § 404.1527(c).  Plaintiff contends that the ALJ's justification for giving Dr. Elzawahry's opinions limited weight—including that his relationship with her was more in the nature of a consultative examiner— ignores the lengthy medical history and longitudinal familiarity of her medical condition that underlay the April 2016 opinions.  She contends that Dr. Elzawahry was the medical source most familiar with Plaintiff's medical condition and resulting limitations, and had a continuing relationship with her over many years while her spinal and other impairments progressed. Plaintiff also contends that the ALJ was not justified in giving great weight to the non-examining state agency medical consultant's assessment that Plaintiff could do a range of light work because that opinion was issued on the basis of an incomplete medical record and was based in large part on Dr. Lewandowski's opinion rendered after one examination.  ECF No. 18 at 28.  Plaintiff argues that Dr. Lewandowski's opinion cannot provide substantial evidence in support of the findings because it was also rendered on the basis of incomplete information and because it was rejected in large part by the ALJ.

The ALJ discussed Dr. Lewandowski's 2014 consultative examination of Plaintiff, specifically noting that during the examination, Plaintiff ambulated without an assistive device, could tip toe and heel walk without

problem, walked without a limp, her straight leg raising was negative, her extremities were symmetric, and her strength bilaterally equal with no muscle atrophy. Tr. 28 (citing records at Tr. 351-56). The ALJ gave only "some weight" to Dr. Lewandowski's opinion, however, with the explanation that "it appears to be an overestimation of her abilities." Tr. 29.

As noted earlier, the ALJ explained the reasons behind giving Dr. Elzawahry's opinions only "limited weight," first, by noting that he used a check box, short answer format. This justification, although applicable under certain circumstances, is not applicable here. *Cf.* Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985) (physician checked boxes on a form with no explanation and did not examine claimant); Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) (ALJ giving little weight to check-off form that did not cite any clinical tests or findings and treatment notes did not report any significant limitations due to back pain); Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physician's use of "questionnaire" format typifies "brief or conclusory" testimony).

The ALJ in this case stated that Dr. Elzawahry provided a check-off form that gave no narrative explaining his opinion discussing treatment visit complaints, examination results, or radiological testing. Tr. 29. However,

in the Medical Source Statement itself, Dr. Elzawahry did provide notes concerning Plaintiff's longstanding back problems, her failed laminectomy syndrome, her radiculopathy, neck pain, back pain, leg pain and weakness. Tr. 421-23. Further, Dr. Elzawahry accompanied his Medical Source Statement with a letter explaining Plaintiff's conditions generally and recognizing Plaintiff's past failed laminectomies and her EMG test results confirming L5-S1 radiculopathy. Tr. 417. In addition, Dr. Elzawahry's office notes of an examination on that same date discussed Plaintiff's history, her medications, review of symptoms, mental status, and other examination results including motor, coordination, sensory, proprioception, gait, reflexes, and musculoskeletal. Tr. 418-19. These notes further explain Plaintiff's condition and provide a context in which the Medical Source Statement may be evaluated. Dr. Elzawahry's examination notes also indicate that a trial of epidural steroids should be considered, as well as an adjustment of pain medication and a trial of physical therapy. Tr. 420. Thus, Dr. Elzawahry's opinion was not simply a check-box form or wholly conclusory and unsupported by objective medical evidence.

As a second reason for giving Dr. Elzawahry's opinions only limited weight, the ALJ found that Dr. Elzawahry's April 14, 2016, letter to Plaintiff's counsel, Tr. 416, was not a medical opinion but was an administrative

finding dispositive of the case.  Tr. 29.  The letter, however, went beyond that ultimate conclusion and stated that Plaintiff has failed laminectomy syndrome with severe radiculopathy and lumbar facet syndrome.  *Id.*  The letter also stated that Plaintiff suffers from seizures that cause a "great deal of limitation to her" and that she is not able to sit, stand, walk, or carry heavy objects for any extended period of time; and the medication for her seizures affects her attention span and driving.  *Id.*  Only in the last paragraph of the letter did Dr. Elzawahry opine that Plaintiff is totally and permanently disabled.  *Id.*

As a third reason for giving Dr. Elzawahry's opinions only limited weight, the ALJ concluded that Dr. Elzawahry was not truly a "treating" physician because he had not seen Plaintiff since 2010.  Tr. 29-30.  However, Dr. Elzawahry had a long history of treating Plaintiff, and records of her other examinations between 2010 and 2016 do not indicate that her condition improved substantially prior to his 2016 examination of her.  Plaintiff was given MRI's on her knees in January 2011 and was examined at the Brain & Spine Center that same month.  Tr. 371, 374-75.  Plaintiff saw ARNP Serian in 2013 for leg problems and falling, and was prescribed Celexa, Ultram, Fioricet, Phenergan, trazodone, and Atarax.  Tr. 334-38.  In 2014, Plaintiff saw Dr. Chantornsaeng for neck pain, low back pain,

anxiety, and several other complaints. Tr. 361-68. Plaintiff reported to Julian Salinas, Ph.D., in 2014 that she stopped working due to pain. She appeared undernourished and walked with a slow pace and stooped posture. Tr. 349. Thus, the medical record provides no basis to conclude that Plaintiff's impairments substantially resolved during the gap of time between the last two examinations by Dr. Elzawahry or that he did not have sufficient longitudinal medical information to give his opinions as her treating physician in 2016.

The ALJ also discounted Dr. Elzawahry's opinions based in part on the consultative examination of Dr. Lewandowski in 2014, but the ALJ actually found that Dr. Lewandowski's opinion was only entitled to "some weight" because it overestimated Plaintiff's abilities. Tr. 29-30. As to Plaintiff's seizures, the ALJ relied on Dr. Lewandowski's notes in 2014 that indicate that she had only eight seizures in seven years, Tr. 30, but the ALJ also cites treatment notes from 2015 document that Plaintiff had seizures in both July and August of 2015. Tr. 30 (citing records at Tr. 409-14).

Several of the ALJ's main reasons for giving only limited weight to the opinions of Dr. Elzawahry are not supported by substantial evidence in the record or do not take account of substantial evidence detracting from the decision to give only limited weight to Dr. Elzawahry's opinions. The

medical record did not support a contrary finding and his opinions were not conclusory or inconsistent with treatment notes or unsubstantiated by clinical findings. Thus, the ALJ did not have good cause to discount the treating physician's opinion without a more complete explanation based on substantial evidence in the record. *See, e.g.*, Hillsman, 804 F.2d at 1181. Accordingly, this unfavorable decision of the Commissioner must be reversed and remanded.

Plaintiff also challenges the ALJ's failure to find that her knee impairment of severe bilateral osteoarthritis was a severe impairment and failing to address that impairment in the RFC analysis. ECF No. 20 at 17-18. On remand, the ALJ should also consider the Plaintiff's severe bilateral osteoarthritis of her knees and whether the medical and other evidence supports a finding that her bilateral severe osteoarthritis of her knees constitutes a severe impairment.

## IV. Conclusion

Considering the record as a whole, the decision of the ALJ is not supported by substantial evidence in the record and application of the proper legal standards. Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for Supplemental Security Income benefits and disables widow's benefits is

**REVERSED** and **REMANDED** for further proceedings**.**  The Clerk shall

enter **JUDGMENT** for Plaintiff.

    **IN CHAMBERS** at Tallahassee, Florida, on March 19, 2018.

**s/  Charles A. Stampelos_____**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**